# Richmond

RUSSELL B. MARTIN, ET AL., PARTNERS TRADING AS MARTIN BROTHERS v. ELIZABETH B. WINSTON.

January 18, 1943.

Record No. 2574.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Burnett Miller, Jr.* and *Albert V. Bryan,* for the plaintiffs in error.

*John S. Barbour* and *C. M. Waite,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This is a writ of error reviewing a judgment setting aside and annulling an arbitration award because the lower court was of opinion that it was void for uncertainty. The pertinent facts are largely found in a number of documents which have been certified to us, some of which, as we shall presently see, the defendant in error contends are not properly a part of the record. We think it will be conducive both to clarity and brevity to state the facts and proceedings in the court below as deduced from these documents, before setting forth our reasons for concluding that those challenged are properly a part of the record.

On November 15, 1938, Russell B. Martin and others, partners trading as Martin Brothers, of whom we shall speak as the contractors, entered into a written contract with Elizabeth B. Winston, to whom we shall refer as the owner, to furnish the necessary materials and construct for her a residence near Winston station, in Culpeper county, Virginia, in accordance with certain plans and specifications prepared by an architect. The work was to commence within three days of the date of the contract and the building was to be substantially completed within five months of the commencement of the work. The original contract price of $23,000 was by reason of additional items increased to the amount of $23,500.20. Payments were to be made as the work progressed.

After the building had been, as the contractors claim, substantially completed and the owner had made partial payments amounting to $19,351.80, a controversy arose between the parties as to whether the work had been done in accordance with the terms of the contract, the plans and specifications. Thereupon the parties entered into a written contract, dated April 22, 1940, whereby they agreed that in accordance with the provisions of chapter 257 of the Code of Virginia (sec. 6159 *ff.*), "all matters in controversy between them growing out of said contract, and any claim that the same has or has not been performed according to" the "true intent and meaning" of the contract, were submitted to the arbitrament and award of two arbitrators, who in turn were authorized and empowered to select a third. The arbitration contract further provided that within fifteen days after its date "each party shall serve upon the other party, or their counsel, a statement in writing of their respective demands, either under the contract, or resulting from the violation thereof, or failure to comply therewith; and each party receiving such notice shall within 20 days thereafter furnish the opposing party in like manner a concise statement in writing of their reply to the other side."

Provisions were made in the contract for hearings before the arbitrators and for the introduction of evidence and exhibits. It was further provided that the arbitrators "shall decide by majority vote any and all issues presented to them within the scope of the controversy, including complying with any award made. The award shall be made in writing, and shall be signed by all or by a majority of the arbitrators, and shall be made within a period of thirty days from the closing of the proceedings."

An order was entered in the court below reciting the execution of the arbitration agreement and directing that the parties should "submit to the award" which should be made pursuant thereto.

In compliance with the arbitration agreement the contractors served upon the owner a statement of their claims. In substance it set out that the contractors had agreed to furnish the materials and construct the building in accordance with the plans and specifications, for the original sum of $23,000; that this amount had been increased by reason of "extras" less "deductions" to the net total of $23,455.05; that the contractors had fully performed the contract and were entitled to receive from the owner the full amount of the contract price; and that from time to time the owner had paid them the total amount of $19,351.80, leaving a balance due of $4,103.25 with interest.

In reply the owner served upon the contractors a statement of her claim in which she set out that the original contract price was $23,000, and that this had been increased by "extras" to $23,500.20.[1] But she listed numerous instances wherein she claimed that the building did not meet the terms of the plans and specifications. Later we shall deal with this statement more in detail. Suffice it here to say that in the first section she claimed that the departures from the plans and specifications were such that the contractors should be

---

[1] This figure represents the gross contract price. That of the contractors ($23,455.05) allows for deductions by reason of "change orders." The award allowed the owner five of such credits, totaling $236.57, thereby fixing the net contract price at $23,263.63 ($23,500.20 less $236.57).

required to remove the structure in its entirety, to restore her property to its former condition, and to refund to her the $19,351.80 which she had paid to the contractors, plus alleged incurred expenses of $3,588.60, or a total of $22,940.40.

In the second section of her statement the owner alleged that should her first claim be denied and should the arbitrators find that the building could be made to conform to the plans and specifications, then she should be paid the necessary costs of making the required changes, which she stated would amount to $24,013.06, plus "liquidated damages" of $22,940.40, with the result that the contractors would owe her the net amount of $23,734.83.

The contractors filed a reply to the owner's statement in which they admitted a few minor deviations from the plans and specifications, but denied the owner's principal contentions.

After these written statements had been served, the arbitrators held numerous hearings extending over a period of approximately six months, at which a large volume of testimony was taken and numerous exhibits were introduced and considered.

On December 21, 1940, and within the time required by the arbitration agreement, the arbitrators filed in the clerk's office of the lower court their award in which they disallowed the owner's "claims and demands", as set out by her, stating that these did not "represent justifiable charges against the contractor because of differences arising out of this contract." But the arbitrators allowed the owner certain stated items amounting in all to $3,759.57, which sum was awarded to her "in consideration of the omissions, deviations, and defective workmanship in the performance of the contract".

On December 30, 1940, and after the expiration of the time fixed in the arbitration agreement for filing the award, the arbitrators filed an addendum to their award in which they stated that, "It is the decision of the arbitrators that Miss Winston shall pay to Martin Brothers the balance due

on the contract after deductions allowed in the report" theretofore filed.

Pursuant to an order of the court a rule was issued from the clerk's office, directed to and summoning the owner to appear before the lower court, at a stated date, to show cause "why the award of the arbitrators, according to the true intent and meaning thereof, when read in connection with the addendum, should not be enforced as a judgment of the court."

In response to this summons the owner appeared by counsel and filed an answer in which she asked that the original award be set aside on the ground, among others, that it was uncertain and void, and that the addendum be rejected because it was filed too late.

In due time the matter came on to be heard by the court upon the documents and proceedings to which we have referred, along with the testimony of the arbitrators, taken over the objection of the owner, that the total of the allowances in the original award, $3,759.57, was intended by them as a credit on the balance of the contract price due by the owner to the contractors.

The lower court refused to adopt the contention of the contractors that they were entitled to a judgment for the difference between the balance of the contract price of $4,148.40 and the credits of $3,759.57 allowed the owner, or the net sum of $388.83. It held that the addendum to the award was filed too late and was, therefore, void, and that the original award was null and void because of uncertainty. To review the order or judgment embodying these holdings and dismissing the proceeding the present writ was allowed.

Much space is devoted in the brief of the distinguished counsel for the owner as to what is properly in the record for consideration by us. Specifically, the contention is that neither the building contract nor the plans and specifications nor the statements of claims by the respective parties are properly a part of the record. The basis of this contention is the manner in which the purported record has been certi-

fied to us in "Certificate of Exception No. 1", the pertinent parts of which are set out in the margin.[2]

"Certificate of Exception No. 3" contains a transcript of the oral testimony of the arbitrators. "Certificate of Exception No. 5" incorporates in the record a copy of the original plans and specifications referred to in the building contract.

The owner makes two contentions with respect to what is in the "record proper" before us. First, she says that since the trial court has certified in "Certificate of Exception No. 1" that "none of these papers *were* formally physically tendered in evidence at the hearing",—that is, that none was specifically handed to the court and asked to be considered in evidence,—this necessarily excludes from the record the building contract, plans and specifications, and the statements of demands by the respective parties. She admits that the remaining documents are properly a part of the record.

---

[2]        "CERTIFICATE OF EXCEPTION No. 1.
                "Filed December 30, 1941.

"I, Alexander T. Browning, Judge of the Circuit Court of Culpepei County, Virginia, do hereby certify that the following papers which are hereto annexed are all of the papers, except the orders, testimony and exhibits, constituting the record in this case and considered by the court in the hearing of this case, and are the true, genuine and entire documents comprising the following instruments:

"1. Building Contract, * * * dated November 15, 1938, for the arbitration of which this proceeding was had, the plans and specifications referred to therein being made a part of the record in this case by Certificate of Exception No. 5.

"2. Arbitration Agreement, dated 22nd of April, 1940, * * * .

"3. Statement of Demands of Martin Brothers filed with the Arbitration * * * .

"4. Statement of Demands of Elizabeth B. Winston of departures from contract, and her claims resulting therefrom, * * * .

"5. Statement of Martin Brothers in reply to statement of Elizabeth B. Winston * * * .

"6. Report and Award of Arbitration * * * , filed in this cause December 21, 1940.

"7. Addendum to the Report of Arbitrators filed * * * December 30, 1940.

"8. Answer of Elizabeth B. Winston to show cause filed * * * April 21, 1941.

"9. Amendment to Answer of Elizabeth B. Winston to Rule to show cause.

■■ We can not agree with this contention. The building contract and the plans and specifications were the very subject matter of the arbitration agreement. Their existence and the controversial issues flowing from them were stipulated in the arbitration agreement. Without these papers the arbitration agreement was unintelligible and the arbitrators could not have acted. The award which the owner admits is a part of the record refers to the contract, plans and specifications. Likewise, the owner's answer to the rule, and particularly the schedule thereto annexed, which she concedes is a part of the record, makes numerous and detailed references to the building contract, the plans and specifications.

Again, the arbitration agreement required each party to serve upon the other a statement of their or her "respective demands". These statements were in the nature of pleadings before the arbitrators, with whom they were lodged and by

(Here follow copies of the specified documents.)

"In reference to the foregoing papers, numbered respectively 1 to 9, inclusive, in this certificate, and those described in Certificate No. 5, the court further certifies that none of these papers *were* formally physically tendered in evidence at the hearing; but the court considered that from their internal evidence they were sufficiently connected with the award to be considered as evidence and were considered in reaching its conclusion, and that no question was raised at the hearing before the court as to whether or not the said papers were to be considered by the court, and the defendant this day, after the announcement of the decision by the court and before the entry of the order, excepted to the action of the court insofar as it gave consideration to any of the several papers, or either of them, mentioned in paragraphs 1, 3, 4 and 5 of this Certificate of Exceptions No. 1, on the ground that neither they nor any of them were offered in evidence at the hearing, or proof offered of their genuineness or pertinency, and on the ground that they nor any of them constituted a part of the record in this case.

"I further certify that the papers described as Items 1, 2, 6 and 7 above in this Certificate of Exceptions No. 1, together with the oral testimony incorporated in Certificate of Exceptions No. 3, and the two documentary exhibits incorporated in Certificate of Exceptions No. 5, all in said case, constitute all of the evidence taken before or considered by the court in the hearing and trial of the above entitled case.

"The foregoing papers are hereby made a part of the record in this case, and this certificate and foregoing papers shall be forthwith delivered to the clerk of the said court at Culpeper, Virginia. * * * "

whom they were used as a guide to the respective claims. The award makes frequent references to the statements and particularly to that of the owner. Without these statements the arbitrators could not possibly have intelligently disposed of the matter before them.

Then, too, without the original contract, the plans and specifications, and the statements of the respective parties, the trial court could not have intelligently disposed of the matter before it, and hence it very properly, we think, considered these along with the other documents referred to in "Certificate of Exception No. 1" and admitted to be a part of the record.

Moreover, as is said in 64 C. J., Trial, sec. 121, p. 115, "Formal introduction of documentary evidence may be waived. Thus a formal introduction is waived where the court and parties treat an instrument as in evidence, * * * or where it is read without objection * * * ." See also, *Lowe* v. *Talbert*, 93 Ind. App. 384, 176 N. E. 36, 37-38, 177 N. E. 339, for a discussion of and collection of cases on the subject.

And so, where, as here, a litigant participates in a hearing which is devoted largely to the consideration of a number of documents, all closely related and all material to the issues involved, and makes no objection that they or any of them have not been formally introduced in evidence, he waives such formal introduction.

The owner next argues that because the trial court has certified "that the papers described as Items 1, 2, 6 and 7 above in this Certificate of Exceptions No. 1, together with the oral testimony incorporated in Certificate of Exceptions No. 3, and the two documentary exhibits incorporated in Certificate of Exceptions No. 5, all in said case, constitute all of the evidence taken before or considered by the court in the hearing", this was tantamount to saying that the court had not considered Items 3, 4 and 5, which are the statements of demands of the respective parties.

While the certificate is perhaps ambiguous, undoubtedly its purpose and effect was to make all of the specified

documents a part of the record. In the first place, the court certified that in its opinion all of the documents "were sufficiently connected with the award to be considered as evidence and were considered in reaching its conclusion". That it did consider the documents which the owner now desires to exclude from the record is further emphasized by the fact that the certificate expressly shows that "after the announcement of the decision by the court", the owner objected to the action of the court in having considered them. In the next place, the certificate specifically states that all of the documents "are hereby made a part of the record in this case" and are ordered to be filed with the clerk.

We come next to the merits, that is, to the consideration of the trial court's conclusion that the original award was void and unenforceable because of "uncertainty." In approaching this phase of the case it will be well to bear in mind what Judge Keith said in *Coons* v. *Coons*, 95 Va. 434, 438, 28 S. E. 885, 886, 64 Am. St. Rep. 804: "Boards of arbitration, which are courts of the parties' own selection, are favored by the law, and every fair presumption is made in order to sustain their award. This, we believe, is the universal rule applied to the interpretation of the agreement to submit, and to all the proceedings which lead up to, and result in, the award." See also, *Equitable Fire, etc., Ins. Co.* v. *Stieffens*, 154 Va. 281, 289, 153 S. E. 731, 733.

As sometimes put, "every reasonable intendment will be indulged in support of arbitrations" (*Mutual Imp. Co.* v. *Merchants', etc., Mut. Fire Ins. Co.*, 112 W. Va. 291, 164 S. E. 256), and they are not to be set aside unless they are clearly illegal (*Hughes* v. *National Fuel Co.*, 121 W. Va. 392, 3 S. E. (2d) 621, 625).

The record is silent as to wherein the lower court found the award to be uncertain, and, hence, we shall discuss the two grounds urged by the owner.

First, it is said that it is impossible to determine from the original award whether the sum of $3,759.57 to the owner is intended as an allowance over and above what she owes

to the contractors, or is intended as a credit on the balance of the contract price due by her to the contractors, as claimed by them. It is significant to note here that the owner does not claim that under the terms of the award she is entitled to recover of the contractors the sum allotted to her, nor does she assign cross-error for the failure of the court to enter in her favor a judgment in that amount. Her argument is that the award is not sufficiently definite to sustain the contention of the contractors.

Much is said in the briefs on both sides as to whether, in arriving at the true meaning and intent of the original award, we are entitled to look to the addendum to the award and to the testimony of the arbitrators. In our opinion it is not necessary to decide these questions for when the original award is considered in the light of the issues presented to the arbitrators, as outlined in the statements of the respective parties, we think it is perfectly apparent that the arbitrators intended that the award of $3,759.57 to the owner should be credited on the unpaid balance of $4,148.40 on the contract price, and that the contractors are entitled to recover the difference of $388.83.

The contractors' statement, as we have seen, was a claim that the building had been substantially completed in accordance with the plans and specifications, and a demand for the unpaid balance of the contract price.

The owner's statement set out in detail wherein she claimed the building failed to comply with the plans and specifications. It concluded with a summary of her "claims and demands" in which, after stating that the original contract price including extras was $23,500.20, on account of which she had paid the sum of $19,351.80, leaving a balance of $4,148.40, she set out in the alternative, in two sections, the amount of refunds and expenses incurred, which she claimed the contractors should be required to pay to her, or the sum total of the liquidated damages and counter-claims which she was entitled to set off against the contractors' claim.

In the first section she claimed that the departures from the terms of the contract and specifications were such that the work could not "be made to conform thereto", and that consequently the contractors should be required at once to "remove their materials and work in connection therewith from my property in its entirety; restore my property to the condition in which it was before they entered upon it, all within a period to be stated; to refund to me all sums heretofore paid to them on account, and compensate me for all damages and expenses which have accrued to me in consequence of their failure to fulfill their contract". These refunds and expenses she listed as Items (a) through (j), both inclusive, and consisted of payments on account to the contractors, amounting to $19,351.80, plus alleged expenses, such as payments to the architect, payments for insurance, expenses of operating the oil furnace, cost of painting, etc., amounting to $3,588.60, or a total of $22,940.40.

In the second section of the claim she said: "Failing the above remedy and in event it shall be determined by the arbitrators that the house as constructed can yet be made to conform to the plans and specifications, the following is submitted as a minimum estimate of bare expense of making the several changes necessary to conform thereto, * * * ." Here the owner listed Items (1) to (16), both inclusive, totaling $24,013.06. In addition to this amount she claimed that she should be allowed "by way of liquidated damages" the sums which she had paid the contractors, amounting to $19,351.80, and the identical items of expenses set out in the first section, amounting to $3,588.60, or a total of $22,940.40. This brought the "Total of liquidated offsets and counterclaims accrued to date" to $46,953.46 (the cost of making the necessary changes, $24,013.06, plus liquidated damages, $22,940.40).

She further claimed in the second section of her statement that, by reason of credits to which she was entitled, the gross contract price of $23,500.20 had been reduced to $23,218.63, and that against this she was entitled to set off

her counterclaim of $46,953.46, which would bring the contractors in debt to her for the difference of $23,734.83.

The owner's claim under the second section of her statement may be summarized thus:

Cost of changes necessary to make the
   building conform to the plans and
   specifications, Items (1) through
   (16) ..................................$24,013.06

"Liquidated damages" claimed:
   Amount paid contractors........$19,351.80
   Expenses incurred...............  3,588.60
                                  22,940.40

"Total of liquidated offsets and coun-
   terclaims accrued to date"..................$46,953.46

      Gross contract price..........$23,500.20
      Less additional credits claimed..  281.57
                                  23,218.63

"Damages due Elizabeth B. Winston
   to enable her to have all necessary
   alterations made"..........................$23,734.83

We thus see that these two main questions were submitted to the arbitrators: (1) Was the building substantially completed in accordance with the plans and specifications, and if not, what refunds and expenses was the owner entitled to? (2) If the building was substantially completed in accordance with the plans and specifications, what cost of changes, liquidated damages, and setoffs, if any, was the owner entitled to against the balance due on the contract?

The arbitrators seem to have carefully considered the owner's claims. Hearings before them extended for more

than six months, at which 742 pages of testimony were taken and numerous exhibits were introduced and considered.

In their award the arbitrators said: "The claims and demands set out by Miss Winston in Section 1, items (a) through (j), and in Section 2, items (1) to and including (16), *does* not represent justifiable charges against the contractor because of differences arising out of this contract."

This was clearly a denial of the owner's claim, set forth in the first section of her statement, that the building fell so far short of the requirements of the contract and the plans and specifications that the contractors should be required to remove the structure and restore the property to its former condition. Necessarily, it was likewise a denial of her claim that she was entitled to a refund of the amounts which she had paid the contractors, totaling $19,351.80, and the expenses which she had incurred, amounting to $3,588.60 (all of which are set forth by her in "Section 1, items (a) through (j)," as we have stated), for the claim to these allowances was predicated upon a finding that the building could not be made to conform to the plans and specifications and should be removed from the property.

When we compare the award with section 2 of the owner's statement we observe that the arbitrators denied the owner's claim as specified in "items (1) to and including (16)," which, as we have seen, amounted to $24,013.06. Having already found, in their consideration of section 1, that the owner was not entitled to a refund of the amounts which she had paid the contractors, $19,351.80, and her alleged expenses of $3,588.60, the arbitrators thus denied the "total of liquidated offsets and counterclaims accrued to date", as stated by her, and amounting to $46,953.46.

The award deals item by item with the owner's claim for credits on the gross contract price by reason of "change orders." These, she claimed, amounted to $281.57, while the award was for $236.57.[3]

---

[3] See note 1, *ante.*

The award then allowed the owner nineteen specific items, totaling $3,523. These included an item of $600 for delay in completing the building, allowances for deviations from the plans and specifications, items for repairing "defects" in the work done, and items covering the cost of conforming the structure to the plans and specifications.

The arbitrators thus summarize their award: "On the basis of the foregoing items and their respective amounts, we award a total of $3,759.57 to Miss Elizabeth B. Winston in consideration of the omissions, deviations, and defective workmanship in the performance of the contract for her residence, * * * ." The specified amount is the total of the nineteen items, $3,523, plus the credits of $236.57 allowed on the contract price.

The award of this amount could not have been intended as an allowance to the owner over and above what she owed the contractors, for, as we have seen, the arbitrators expressly disallowed every item in which she asserted such claim. Therefore, it must have been intended as a credit on the balance of the contract price.

In view of the admissions of the parties and the issues before the arbitrators, we think the following summarized account is clearly deducible from the award:

| | |
|---|---:|
| Amount of agreed contract price | $23,500.20 |
| Less agreed amounts paid contractors | 19,351.80 |
| Agreed unpaid balance on contract price | $ 4,148.40 |
| Additional credits on contract price allowed owner | $ 236.57 |
| Allowances for omissions, deviations, etc. | 3,523.00 |
| Total allowances awarded to owner | 3,759.57 |
| Balance due contractors | $ 388.83 |

■ While it is true that, strictly speaking, the arbitrators should have made these calculations and subtractions, and should have awarded the net difference to the contractors, their failure to do so does not, in our opinion, render the award fatally defective where its true intent and meaning are apparent.

In 6 C. J. S., Arbitration and Award, sec. 84, p. 233, it is said:

■ "Where the duty required of the arbitrators is the ascertainment of a definite sum, an award which, by failing to fix the amount, leaves that part of the controversy uncertain, and which furnishes no data from which the amount can be computed, is bad. It is not always absolutely necessary, however, that an award should state in figures the exact amount to be paid, for it is sufficiently certain if it gives a basis or rule by which the amount can be ascertained, or nothing remains but a mere mathematical calculation."

■ In Morse, Arbitration and Award, p. 420, it is said: "If so simple an arithmetical calculation as the striking a balance of determined items alone remains to be done, involving only addition and subtraction of known amounts, the award will be certain."

■ ■ As was said in *Clark Millinery Co.* v. *National Union Fire Ins. Co.*, 160 N. C. 130, 75 S. E. 944, 949, Ann. Cas. 1914C, 367: "Reasonable certainty of meaning is sufficient, for it will be construed in a fair and liberal spirit and favorably, with a view to support it as far as a sensible interpretation will allow. * * * The degree of uncertainty, to avoid an award, should be such as would avoid any other contract, such as would leave the meaning of the arbitrators wholly in doubt."

We note in passing that it is stated in the contractors' brief, and not denied in that of the owner, that the trial court was of opinion that it was the purpose and intent of the award to allow the owner a credit on the balance of the contract price, leaving her indebted to the contractors in

the amount stated by us, and that the award was sufficiently certain and definite in this respect.

If we correctly understand the briefs, the lower court held that the award was fatally uncertain and, therefore, void by reason of paragraphs 18 and 5.

Paragraph 18 reads as follows: "In regard to the heating work, the heating contractor should be instructed to do the work covered in Paragraphs 275 and 278—Controls and Balancing of System—when notified to do so, at no additional cost to the owner. To cover the omissions and deviations from the specifications for the heating, we award a credit to the owner of....$600."

Paragraphs 275 and 278 of the specifications therein referred to are copied in the margin.[4]

In addition to the contention that the specifications are not properly a part of the record (which contention we have already disposed of), the argument is made that these paragraphs of the specifications "are so complicated, intricate and involve the application of technical skill and experience to such a degree that no court of equity would attempt to enforce specific performance" of them. Moreover, it is said that paragraph 18 of the award and these items in the specifications call for future performances both as to work to be done and tests to be made which may give rise to

---

[4] "275. Furnish and install where shown on the drawings 4 (four) thermostats, a humidstat, and separate fan switch for summer ventilation. Three of the thermostats shall be located in the following rooms: Living Room, Bedroom No. 1, and Bedroom No. 4. These thermostats shall control the air conditioning circuit so as to start the circulator and then the fan. An aquastat shall be provided in the return line from the A. C. unit to start the circulator when the water temperature drops to 80 degrees and stop when the water temperature reaches 120 degrees. Thermostat and aquastat shall be provided with disconnect switches. The humidstat shall control a solenoid valve in the water line to the humidifier sprays. This shall only open when the fan is in operation."

"278. Before final payment is made the contractor shall perform a test, on the system and make all necessary adjustments so that each room shall receive within 5%, the amount of air as indicated on the drawings, and shall further guarantee that his equipment will maintain a temperature of 70 degrees F. within the house when the outside temperature is 0 degrees F."

litigation. Hence, it is said, the award is lacking in the required certainty and finality.

In the first place, we do not consider that these paragraphs of the specifications are unduly involved or complicated. Certainly the owner did not think so when she entered into the contract of which they are a part. Paragraph 275 requires the contractors to furnish and install automatic gauges or controls regulating and controlling the temperature, humidity and circulation of air in certain rooms in the building. Paragraph 278 specifies the performance to be required of the system and requires the contractors to make the usual adjustments and tests to insure such performance.

In the next place, the fact that this paragraph of the award, read in connection with the two sections of the specifications, requires the future performance of work and the future testing of the heating plant, does not, in our opinion, render the award uncertain or lacking in finality. The purpose of the award is to fix the rights and obligations of the parties, and this it does. Certainty of the award is to be measured or determined by the character of what is arbitrated. As is said in 6 C. J. S., Arbitration and Award, sec. 81, p. 226: "Moreover, an award is sufficient if it is as final as the nature of the thing submitted will admit of, and the arbitrators have done everything they could do, upon the matters submitted, to make the award final."

Arbitration of a controversy involving the payment of money would, of course, require a definite money award free of future performance. But the arbitration of a building agreement need not be so final. Such contracts usually provide for tests or guaranties of the efficiency of the heating system, of the roofing, and of the water proofing of the basement, etc. Often the sufficiency of the performance of such an agreement can not be ascertained upon the completion of the work. This is the very reason for such guaranties and tests. If an award ignored these factors the owner would be deprived of highly valuable terms in his contract. Indeed, the omission of the requirement for the

future performance of these stipulations in the specifications might have impaired the validity of the award.

Moreover, the arbitration agreement provides: "If a controversy shall arise after the award as to whether the award or any part thereof has been complied with, such controversy shall be determined by the same arbitrators, or a majority of them, who, after notice and hearing the parties and inspecting the structure, materials or work claimed to have been done pursuant to said award for the purpose of ascertaining whether or not such award has been complied with, shall make return in writing of the facts in that regard, and shall determine the extent, if any, of any failure to comply with the original award, and may require the same to be complied with within a reasonable period, to be stated in such award, or may award the other party a sum of money by way of compensation or damage by reason of such failure, in addition to any part of the award which may have been complied with."

Again, there is this provision: "The arbitrators shall decide by majority vote any and all issues presented to them within the scope of the controversy, including complying with any award made."

Thus, the arbitration agreement itself contemplates that future controversies may arise in the execution of the award and makes provision for their settlement.

Our observations and conclusion with respect to the future performances required of the contractors in paragraph 18 apply with equal force and effect to paragraph 5, which requires the contractors to give the owner a year's guarantee of the sufficiency of the concrete floor in the basement.

To sustain the conclusion of the trial court would mean that the entire proceedings before the arbitrators would go for naught. It is certain, then, that the parties would be headed for a prolonged and expensive litigation, the very thing the arbitration agreement sought to prevent. Surely, this should be avoided if, as here, the rights and obligations of the parties have been fixed by the award with reasonable certainty and are capable of enforcement.

On the whole, we are of opinion that the award is sufficiently certain and final to be enforced, and that it should be enforced. What we have said in reaching this conclusion disposes of the cross-errors assigned.

The judgment complained of will be reversed, the award will be reinstated, and a final judgment will be entered here in favor of the contractors against the owner for the sum of $388.83, that being the difference between the admitted balance due on the contract price and the allowances made to the owner, with interest thereon from December 21, 1940, the date on which the award was filed in the clerk's office below.

*Reversed and final judgment.*