# Richmond

RUSSELL B. MARTIN, ET ALS. V. ELIZABETH B. WINSTON.

November 25, 1946.

Record No. 3126.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Buchanan, JJ.

The opinion states the case.

*Robert Button* and *Burnett Miller, Jr.*, for the plaintiffs in error.

*John S. Barbour* and *Charles M. Waite*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This litigation, before us a second time, has its inception in a contract executed between the parties in 1938 whereby the plaintiffs in error, Russell B. Martin and others, general contractors, agreed to construct for Miss Elizabeth B. Winston a residence in Culpeper county.

After the building had been substantially completed a controversy arose between the parties as to whether the work had been done according to the terms of the contract. To adjust these differences the parties, in April, 1940, entered into a written arbitration agreement under the provisions of chapter 257 of the Code of Virginia (section 6159 *ff.*). Pursuant to the statute, on April 23, 1940, an order was entered in the court below, reciting the execution of the arbitration agreement and directing that the parties should "submit to the award" which might thereafter be made.

The arbitrators submitted an award on which the trial court refused to enter judgment on the ground that it was void for indefiniteness. On the former appeal we reversed that finding, reinstated the award, and entered judgment thereon in favor of the contractors against Miss Winston for the sum of $388.83, with interest and costs. *Martin v. Winston*, 181 Va. 94, 23 S. E. (2d) 873 (*certiorari* denied, 319 U. S. 766, 63 S. Ct. 1330, 87 L. Ed. 1716).

As was noted in our former opinion (181 Va., at page 113 *ff.*, 23 S. E. (2d), at page 880 *ff.*), the award on which we entered final judgment contained these two provisions which required future performance by the contractors:

"(5) In reference to concrete floor in basement, we insist on Martin Brothers' giving Miss Winston the year's guarantee, as agreed for this item."

"(18) In regard to the heating work, the heating contractor should be instructed to do the work covered in

Paragraphs 275[1] and 278[2]—Controls and Balancing of System—when notified to do so, at no additional cost to the owner."

The original arbitration agreement provided for the settlement of future controversies in this language: "If a controversy shall arise *after the award* as to whether the award or any part thereof has been complied with, such controversy shall be determined by the same arbitrators, or a majority of them, who, after notice and hearing the parties and *inspecting the structure*, materials or work claimed to have been done pursuant to said award for the purpose of ascertaining whether or not such award has been complied with, shall make return in writing of the facts in that regard, and shall determine the extent, if any, of any failure to comply with the original award, and may require the same to be complied with within a reasonable period, to be stated in such award, or may award the other party a sum of money by way of compensation or damage by reason of such failure, in addition to any part of the award which may have been complied with."

Shortly after the denial of a writ of *certiorari*, on June 7, 1943, the parties, through their respective counsel, began a lengthy correspondence with reference to the duties to be performed by each under the terms of the award. The con-

[1] "275. Furnish and install where shown on the drawings 4 (four) thermostats, a humidstat, and separate fan switch for summer ventilation. Three of the thermostats shall be located in the following rooms: Living Room, Bedroom No. 1, and Bedroom No. 4. These thermostats shall control the air conditioning circuit so as to start the circulator and then the fan. An aquastat shall be provided in the return line from the A. C. unit to start the circulator when the water temperature drops to 80 degrees and stop when the water temperature reaches 120 degrees. Thermostat and aquastat shall be provided with disconnect switches. The humidstat shall control a solenoid valve in the water line to the humidifier sprays. This shall only open when the fan is in operation."

[2] "278. Before final payment is made the contractor shall perform a test on the system and make all necessary adjustments so that each room shall receive within 5%, the amount of air as indicated on the drawings, and shall further guarantee that his equipment will maintain a temperature of 70 degrees F. within the house when the outside temperature is 0 degrees F."

tractors insisted that Miss Winston should pay the amount of the judgment entered by this court in their favor, while Miss Winston insisted that this should not be done until the contractors had complied with the terms of Item 18, *supra*, of the award.

Finally, on January 17, 1944, counsel for the contractors wrote counsel for Miss Winston that the contractors had fully complied with the terms of this item and again demanded payment of the balance due. In the meantime the house had never been occupied. On February 15 counsel for Miss Winston replied that an inspection of the premises by her engineer showed that the work had not been properly done and demanded that further tests and adjustments be made. This demand the contractors promptly rejected.

Fourteen months later, on April 12, 1945, counsel for Miss Winston wrote counsel for the contractors, again insisting that the work required by Item 18 of the award had not been done. This letter, for the first time, called attention to the fact that the "cement flooring in the cellar does not comply with the terms of the award," evidently referring to Item 5, *supra*, of the award. Continuing, the letter said: "From this it is evident that a controversy has arisen subsequent to the award as to whether it had been complied with, and pursuant to the contract of arbitration it is necessary for this controversy to be submitted to the same arbitrators who made the award. I am therefore writing to ask that your clients will join her in a request that these same arbitrators assemble and pass on these differences at as earlier (*sic*) a date as may be agreeable to them and to us."

On April 21, 1945, the contractors, through their counsel, answered that they had fully complied with the award, and that "We do not agree that an actual controversy exists as to whether the award has been complied with. Miss Winston's present claims are frivolous and unsubstantial. Therefore, we must decline your request to join your client in asking the arbitrators to assemble and pass on the claims of Miss Winston."

Shortly after the receipt of this letter counsel for Miss Winston filed in the court below a written motion for a revocation of the original order entered by the court on April 23, 1940, taking cognizance of the arbitration agreement entered into between the parties and binding them to submit to such an award as might be made pursuant thereto. The basis of this motion was that the letter of the contractors' counsel, dated April 21, 1945, constituted a refusal on their part to proceed under the agreement to arbitrate the differences which had arisen between the parties since the first award, and that such refusal entitled Miss Winston to be released from the obligation of the arbitration agreement.

The contractors demurred to the motion on a number of grounds, among which was that their letter of April 21, 1945, did not constitute a refusal to arbitrate, and, in no event, justified a revocation of the arbitration agreement.

The contractors then offered to file an answer which the trial court struck on the theory that it injected matters not pertinent to the issue as to whether the order binding the parties to the award should be revoked.

After a hearing upon the sufficiency of the motion, the lower court overruled the demurrer and entered a final judgment revoking the arbitration order, and to review that judgment the present writ has been allowed.

The issue before us is quite narrow. We are not concerned with whether the contractors have fully performed their obligations under the construction contract or under the former award. Our only concern is whether the lower court, under the circumstances stated, was right in holding that the contractors were guilty of a breach of the arbitration agreement which released Miss Winston from its provisions, or whether she is still bound to present her claims and demands to the arbitrators in the manner in which she had agreed to do.

It will be observed that the provision in the agreement for the arbitration of future controversies does not specify how the arbitrators may be assembled. Of course, they could

have been called together by a joint request of the parties, but that was not the prescribed method. Presumably, either party had the right to call upon the arbitrators to assemble and consider her or their claims. As is said in 6 C. J. S., Arbitration and Award, section 22, p. 164, "Either party may in such case request the arbitrators to proceed within a reasonable time."

■ Certainly, there is no requirement that either party, upon the presentation of a claim to the other, must unite with the latter in requesting the arbitrators to convene.

The agreement further provided that, "each party shall serve upon the other party, or their counsel, a statement in writing of their respective demands, either under the contract, or resulting from the violation thereof, or failure to comply therewith; and each party receiving such notice shall within 20 days thereafter furnish the opposing party in like manner a concise statement in writing of their reply to the other side."

There is no claim that Miss Winston served upon the contractors such notice of her claims, and that they failed to co-operate in having these disposed of by the arbitrators. Indeed, had she proceeded thus, the contractors were bound to have co-operated, or else would have run the risk of an adverse award by default.

■ Therefore, we do not agree with the lower court that the letter of the contractors' counsel, dated April 21, 1945, constituted a refusal on their part to arbitrate the claims and demands of Miss Winston, or that it was a breach of the contract which entitled her to have it revoked. True, the contractors refused to join with her "in asking the arbitrators to assemble" and pass upon her claims. But, as has been pointed out, they were not required under the terms of the arbitration agreement to do so.

■ Moreover, even if the contractors' letter complained of constituted a refusal on their part to arbitrate, this did not *ipso facto* release the parties from their agreement. Code, section 6160, provides: "No such submission, entered or agreed to be entered of record in any court, shall be

revocable by any party to such submission, without the leave of such court; * * * ."

Nor do we think that such refusal, under the circumstances stated, warranted the trial court in revoking the agreement. The attitude of the contractors deprived Miss Winston of no right or remedy to which she was entitled. Notwithstanding such letter, she was and still is free to pursue her remedies under the arbitration agreement, and this, we think, she must do.

The view we have taken of the matter makes it unnecessary to discuss the other questions raised in the briefs.

We reverse the judgment complained of and dismiss, with costs, the motion to revoke the order requiring the parties to submit to the arbitration agreement.

*Reversed and final judgment.*